Shirley MINCHEW, Respondent,

v.

MINNESOTA ODD FELLOWS
HOME, Relator,

Commissioner of Jobs and
Training, Respondent.

No. CX–88–878.

Court of Appeals of Minnesota.

Oct. 4, 1988.

Shirley Minchew, Lonsdale, pro se.

Robert S. Halagan, Felhaber, Larson, Fenlon & Vogt, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and SCHUMACHER and IRVINE, JJ.

## OPINION

IRVINE, Judge.*

Relator Minnesota Odd Fellows Home ("Home") seeks review of a decision by the Department of Jobs and Training which awarded unemployment compensation benefits to respondent Shirley Minchew, a former employee of the Home. We affirm.

### FACTS

Shirley Minchew began working as a resident care technician for the Home in July 1986. The following month, Minchew was given a medical leave of absence, due to asthma. Minchew returned to work in Oc-

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

tober 1986, at four hours per shift, and in November she increased her hours to six hours per shift. In December 1986, Minchew increased her hours to seven and a half hours per shift, or full-time employment.

During her employment with the Home, Minchew continued to experience problems with her asthma, and also with stress, as a result of a demanding schedule. She tried to find a position in a different department with the Home, but there were no suitable openings. The Home was aware of Minchew's asthma, and knew she was looking for another position.

On October 23, 1987, Minchew received a performance evaluation which made her unhappy. Minchew did not report to work on October 24, 25 and 27, due to chest pains. On October 28, Minchew advised the Home she was waiting for a telephone call from her doctor about continuing her employment. On October 29, 1987, Minchew resigned from the Home.

Minchew applied for unemployment compensation benefits, claiming that she had good cause to quit, due to her serious illness of asthma and related stress. At a hearing conducted by a referee with the Department of Jobs and Training, Minchew submitted two medical documents. While one document, dated October 28, 1987, indicated that an initial evaluation in May 1987 did not warrant a finding of disability, another, undated document, signed by Minchew's treating physician stated that Minchew was suffering from asthma and severe job stress, and that the doctor had advised her to quit due to her disability and her inability to meet her job demands.

Minchew testified that her doctor had suggested, due to her health, asthma condition, and stress, that she seek less stressful employment. Minchew also testified that approximately six months earlier, her physician had recommended that she separate from employment. She testified that when she quit her job, she told the Home's director of nurses that she had been to her doctor and he had suggested that she find other work that was less stressful.

The Home disputed Minchew's claim for benefits, arguing that she had quit because of her poor performance evaluation, and not her illness. In the alternative, the Home argued that Minchew had not made reasonable efforts to retain her employment. It was the position of the Home that Minchew should have requested a reduction in her hours of work, to accommodate her illness.

Following the hearing, the Department referee determined that Minchew failed to establish good cause attributable to the employer for her resignation. On appeal, a Commissioner's representative reversed, finding that Minchew resigned upon the advice of her doctor, after making reasonable efforts to retain her employment.

## ISSUES

1. Did the Commissioner's representative err by determining that Minchew voluntarily resigned due to personal serious illness?

2. Does the record support the Commissioner's determination that Minchew made reasonable efforts to retain her employment?

## ANALYSIS

1. An individual who voluntarily discontinues employment without good cause attributable to the employer is disqualified for waiting week credit and unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(a) (Supp.1987). The legislature has provided a specific exception to disqualification where the employee's separation is "due to personal serious illness, provided that such individual has made reasonable efforts to retain employment". Minn.Stat. § 268.09, subd. 1(c).

Ordinarily, an employee who resigns has the burden of proving good cause to quit. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn. 1978). Similarly, we conclude Minchew had the burden of proving that the serious illness exception to disqualification was applicable to her situation.

 The Commissioner's representative found that Minchew discontinued her employment due to her own serious illness. The Home claims there is no evidence to support this finding, and argues instead that Minchew resigned because of her poor performance evaluation.

On appeal, the Commissioner's findings should be upheld unless they are clearly erroneous. *White v. Metropolitan Medical Center,* 332 N.W.2d 25 (Minn.1983). There is sufficient evidence in the record, including testimony by Minchew and a medical statement from her doctor, to support the Commissioner's finding that Minchew resigned because of her asthma and related stress.

2. We stated in *Hirt v. Lakeland Bakeries,* 348 N.W.2d 400 (Minn.Ct.App.1984):

In determining what is a reasonable effort to retain employment, the Commissioner must determine what is reasonable for the particular employee under the circumstances of that case. * * * The findings of the Commissioner must be reviewed in the light most favorable to the decision and are not to be disturbed if there is evidence reasonably tending to support them.

*Id.* at 401–02 (citations omitted.)

 The Commissioner's representative found that Minchew made reasonable efforts to retain her employment with the Home when she attempted to find another position in a different department.

The Home points to the fact that Minchew never requested a reduction in hours before she resigned. The Home argues that because Minchew did not request a reduction in her hours, she did not make reasonable efforts to retain her employment.

In other contexts, this court has stated that an employee's reduction in hours from full-time to part-time constitutes a voluntary quit; i.e., the part-time position is a new job. *Honeywell, Inc. v. Hoyhtya,* 400 N.W.2d 818, 821 (Minn.Ct.App.1987); *Hogenson v. Brian Knox Builders,* 361 N.W.2d 163, 165 (Minn.Ct.App.1985). We conclude the serious illness exception to disqualification requires that an employee must make reasonable efforts to retain the same employment.

Further, the evidence indicated that Minchew was unsuited for the resident care technician position. The Home introduced no evidence that a reduction in hours would have resolved Minchew's problems with asthma and stress.

### DECISION

The Commissioner's representative properly determined that Minchew resigned due to her personal serious illness after making reasonable efforts to retain her employment.

AFFIRMED.