**BEAVER CREEK MUTUAL INSUR-ANCE COMPANY, Relator,**

v.

**COMMISSIONER OF JOBS AND TRAINING, Respondent.**

No. C2–90–1359.

Court of Appeals of Minnesota.

Nov. 20, 1990.

Donald R. Klosterbuer, Luverne, for relator.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Nancy J. Joyer, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

RANDALL, Judge.

Relator Beaver Creek Mutual Insurance Company (Beaver Creek) seeks review of a decision by the Commissioner of Jobs and Training. Beaver Creek argues the Commissioner erred by determining its officers were "employees" for unemployment compensation purposes. We affirm.

## FACTS

Beaver Creek is a township mutual insurance company, organized as a corporation pursuant to Minn.Stat. §§ 67A.01–.26 (1988). Beaver Creek has a board of directors, who are paid $40 for each meeting they attend. The directors are elected by the company's policyholders.

Beaver Creek's officers are elected by the board of directors. Officers are also paid $40 for each board of directors' meeting they attend. Robert Latham, Thomas Foster and Jeffrey Jensen were officers of Beaver Creek in 1988 and/or 1989.

All of Beaver Creek's day-to-day operations are managed by the Latham Agency, Inc. (LAI). LAI rents space from Beaver Creek in its building in Luverne, Minnesota. As compensation for LAI's services, Beaver Creek pays LAI $225 per million dollars of insurance in force.

LAI furnishes all employees necessary to manage Beaver Creek's operations, and LAI, rather than Beaver Creek, has the right to hire, discharge, and control the performance of those employees. LAI's employees underwrite policies, adjust claims, perform inspections, issue policies, collect premiums, and perform clerical and records work. LAI trains and pays its employees, and is responsible for withholding federal and state tax and social security. LAI reports all of its employees' and officers' salaries to the Department of Jobs and Training for unemployment compensation purposes.

LAI has eight salaried employees, including Robert Latham and Thomas Foster, who are also officers of LAI. Latham, Foster, and Jeffrey Jensen are all licensed sales agents for LAI.

Fourteen other independent agencies sell Beaver Creek's insurance and are paid on a commission basis. These other agencies issue no policies themselves, but submit proposed policies to LAI for approval and issuance. LAI issues the policies in the name of Beaver Creek and sends them back to the independent agencies.

When a policyholder suffers a loss covered by insurance, LAI receives notice on behalf of Beaver Creek, and handles the claim. In particularly complicated situations, Beaver Creek may employ an independent adjustor; however, LAI handles 99% of the problems that arise.

LAI represents approximately 20 different insurance companies, including Beaver Creek. LAI's officers sell insurance for all of the companies LAI represents. LAI provides services for another insurance company, which are similar to those services provided for Beaver Creek.

In April 1989, the Department of Jobs and Training Tax Liability Unit issued a determination that an employer-employee relationship existed between Beaver Creek and its officers. Accordingly, the Department concluded Beaver Creek was required to pay unemployment taxes on wages paid for all services performed by its officers.

Beaver Creek appealed the Department's determination to a referee, who conducted a hearing. Testimony and records were introduced by Robert Latham and a Department tax specialist. Following the hearing, the referee issued findings and a decision that Beaver Creek's officers were its "employees", and that the $40 per meeting paid to the officers constituted reportable wages for unemployment compensation purposes.

The referee subsequently issued an amended decision, concluding that all remuneration paid by LAI to Beaver Creek's officers for services performed in managing the business of Beaver Creek constituted reportable wages.

Beaver Creek appealed the referee's decision to a Commissioner's representative, who modified the referee's findings, but affirmed the conclusion that Beaver Creek's officers were "employees", and that all remuneration for their services, whether paid directly or through LAI, constituted reportable wages for unemployment insurance purposes.

## ISSUE

Did the Commissioner's representative err by concluding an employment relation-

ship existed between Beaver Creek and its officers?

## ANALYSIS

■ The standard of review in cases involving the question whether an employment relationship exists is defined by the Minnesota Administrative Procedure Act. Minn.Stat. § 268.12, subd. 13(4) (1988). We may affirm the Department's decision, or remand the case for further proceedings, or reverse or modify if the relator's substantial rights have been prejudiced because the Department's findings, inferences, conclusions, or decisions are unsupported by substantial evidence in view of the record as submitted; arbitrary and capricious; or affected by other error of law. Minn.Stat. § 14.69(d)-(f) (1988). On appeal, we will review the Commissioner's representative's decision, rather than the referee's. *Chellson v. State Division of Employment and Security*, 214 Minn. 332, 335, 8 N.W.2d 42, 44 (1943).

■ The determination whether a worker is an employee or an independent contractor involves a mixed question of law and fact. *Wise v. Denesen Insulation Co.*, 387 N.W.2d 477, 479 (Minn.App.1986). The label given by the parties themselves is not determinative; the relationship is determined by law, not the parties. *Johnson v. Independent School District No. 535*, 291 N.W.2d 699, 702 (Minn.1980); *Speaks, Inc. v. Jensen*, 309 Minn. 48, 243 N.W.2d 142, 145 (1976).

The legislature has defined "employment" as including "[a]ny service performed * * * by * * * any officer of any corporation". Minn.Stat. § 268.04, subd. 12(1)(a) (Supp.1989). The Commissioner's representative cited this provision, as well as Minn.R. 3315.0220 (1989), which provides that "the term 'wages' shall not include * * * customary and reasonable directors' fees paid to individuals who are not otherwise employed by the corporation of which they are directors". The Commissioner's representative concluded that pursuant to these provisions, Beaver Creek's officers must be considered "employed" by Beaver Creek; therefore, their directors' fees and

all other remuneration were reportable as taxable wages.

Beaver Creek argues that when framing the definition of "employment" in Minn. Stat. § 268.04, subd. 12(1)(a), the legislature intended that services performed by an officer of a corporation should mean service performed for or on behalf of that corporation. *See Hough Transit, Ltd. v. Commissioner of Jobs and Training*, 408 N.W.2d 701, 702 (Minn.App.1987) (officer of corporation who performed services for that corporation was engaged in "employment" for unemployment compensation purposes). We agree with Beaver Creek's argument.

■ When construing statutory language, our function is to apply ordinary rules of statutory construction to ascertain and effectuate the legislature's intent. *Stearns–Hotzfield v. Farmers Insurance Exchange*, 360 N.W.2d 384, 387 (Minn.App. 1985) (citing *Nordling v. Ford Motor Co.*, 231 Minn. 68, 77, 42 N.W.2d 576, 582 (1950)). While the courts will defer to an agency's construction of its own statutes in certain instances, ultimately the construction of a statute is a matter of law upon which the judiciary must have the final word. *See Tuma v. Commissioner of Economic Security*, 386 N.W.2d 702, 707 (Minn.1986).

■ Canons of statutory construction dictate that statutes must be construed as a whole; various provisions within a statute should be interpreted in light of one another. *Anderson v. Commissioner of Taxation*, 253 Minn. 528, 533, 93 N.W.2d 523, 528 (1959). Elsewhere in Chapter 268, the legislature has defined "employing unit" as "any * * * corporation [who has] * * * in its employ one or more individuals performing services *for it*". Minn.Stat. § 268.04, subd. 9 (1988) (emphasis added). We conclude that employment by an officer, as defined in Minn.Stat. § 268.04, subd. 12(1)(a), should be limited to services performed by the officer for that corporation.

■ The Commissioner found that Beaver Creek's officers received payment from LAI for managing and operating Beaver

Creek's business. This finding is supported by the record. Although LAI paid the officers for their services, those services were performed by Beaver Creek's officers for Beaver Creek. We conclude Beaver Creek's officers were its "employees" for unemployment compensation purposes.

We expressly limit our decision to those services performed by Beaver Creek's officers for Beaver Creek, such as selling Beaver Creek's policies and managing and administering Beaver Creek's business. We do not imply that the officers' other services for LAI as independent agents should be considered employment for Beaver Creek, or for any other insurance company. It is our understanding LAI will continue to report its officers' and other employees' salaries to the Department for unemployment compensation purposes; however, this remuneration must be reduced by the remuneration received by Beaver Creek's officers and reported to the Department as services for Beaver Creek.

### DECISION

The Commissioner properly concluded that remuneration for services performed by Beaver Creek's officers for Beaver Creek constituted reportable wages for unemployment compensation purposes.

Affirmed.